IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| MARK L. GUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRINCE GEORGE COUNTY, VIRGINIA, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | No.  3:21cv00631 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIRGINIA RETIREMENT SYSTEM, | ) | |
| | ) | |
| Relief-Defendant. | ) | |
| ———————————————— | ) | |

## COMPLAINT OF THE UNITED STATES AND MARK L. GUNN
### (For Violation of the Uniformed Services Employment and Reemployment Rights Act of 1964, 38 U.S.C. § 4301, *et seq*.)

### INTRODUCTION

1.      Plaintiffs, the United States of America ("United States") and Mark L. Gunn, a major in the Virginia Army National Guard ("Major Gunn"), bring this civil action, by and through their undersigned attorneys, pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, *et seq*.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. §§ 1331 and 1345 and 38 U.S.C. § 4323(b)(1) and (3).

3.      Venue is proper in the Eastern District of Virginia under 28 U.S.C. § 1391(b)(1)-(2) and 38 U.S.C. § 4323(c)(1)-(2) because both Prince George County, Virginia, and the Virginia Retirement System ("VRS") are located in and operate within this judicial district, and because the events giving rise to the claims occurred in the Eastern District of Virginia.

## PARTIES

4.      Plaintiffs are the United States and Major Gunn.  Pursuant to 38 U.S.C. § 4323(a)(1), the Attorney General of the United States has authorized, through his designated delegates, the undersigned attorneys to appear on behalf of and act as attorneys for Major Gunn in his claims against Prince George County, Virginia.  The Attorney General has further authorized, through his designated delegates, a claim against the VRS in the name of the United States.

5.      Defendant Prince George County, Virginia ("Prince George County"), is located in and operates within this judicial district and maintains an office at 6602 Courts Drive, Prince George, Virginia, 23875.

6.      Defendant Prince George County is subject to suit under USERRA pursuant to 38 U.S.C. § 4323(a), because it is an "employer" within the meaning of 38 U.S.C. § 4303(4)(A) and is a "private employer," within the meaning of 38 U.S.C. § 4323(i).

7.      Relief-Defendant VRS is an independent agency of the Commonwealth of Virginia that delivers retirement and other benefits to Virginia public sector employees.

8.      Relief-Defendant VRS is located in and operates within this judicial district and maintains its principal place of business at 1200 East Main Street, Richmond, Virginia, 23219.

9.      Under USERRA, Relief-Defendant VRS is a "state employer," as defined by 20 C.F.R. § 1002.5(d)(3), and as contemplated in 38 U.S.C. § 4323(a)(1), for individuals that they do not actually employ, but only with respect to the obligation to provide pension benefits.

10.     Relief-Defendant VRS is named as a nominal defendant only, as contemplated by Federal Rule of Civil Procedure 19(a)(1)(A), for purposes of providing complete relief among existing parties.

## FACTUAL ALLEGATIONS

### Prince George County Police Department

11.     Defendant Prince George County maintains a police department, known as the Prince George County Police Department ("PGCPD"), which serves as Defendant Prince George County's primary law enforcement organization.

12.     At all times relevant to this complaint, PGCPD has consisted of two divisions – the Support Operations Division, which includes the Patrol Unit, and the Field Operations Division, which includes the General Investigations Unit and Special Investigations Unit.

### Major Gunn's Virginia Law Enforcement and Military Careers

13.     Major Gunn began his Virginia law enforcement officer career on September 7, 1996, as a jail officer at Riverside Regional Jail in Prince George, Virginia, and then became a patrol officer with the Petersburg, Virginia, Police Department in January 1997.

14.     Major Gunn joined PGCPD on December 15, 1999, as a uniformed Patrol Unit officer.

15.    After his second application to become a PGCPD detective, Major Gunn was selected for a General Investigations Unit detective position in or around February 2002.

16.    On December 1, 2004, Major Gunn enlisted in the Virginia Army National Guard ("VARNG").

17.    As of February 23, 2018, Major Gunn had served less than five years of non-exempt active duty military service.

18.    Before February 2016, PGCPD always reemployed Major Gunn as a General Investigations Unit detective after he returned from VARNG military service.

**Major Gunn's Absence from PGCPD from February 2016 to January 2018**

19.    On or about February 15, 2016, Major Gunn informed his PGCPD supervisor and Defendant Prince George County's Human Resources ("HR") Director that he was being called to active duty, and he provided both individuals with copies of orders dated February 19, 2016, calling him to active duty in the VARNG pursuant to 32 U.S.C. § 502(f), for the period February 25, 2016, to September 30, 2016.

20.    When Major Gunn entered active duty on February 25, 2016, he was the longest serving detective in the General Investigations Unit and one of PGCPD's most experienced detectives.

21.    The VARNG extended Major Gunn's active duty military orders twice, through March 31, 2018.  Shortly after receiving each active duty extension order, Major Gunn hand-delivered a copy of his orders to his PGCPD supervisor.

22.    Although his orders were extended through March 31, 2018, Major Gunn returned to work at PGCPD on January 25, 2018, and his VARNG active duty service officially ended on February 23, 2018, with an honorable characterization of service.

**September 2017 Bonus**

23.     On September 29, 2017, while Major Gunn was still on active duty, Defendant Prince George County awarded a $1,250 bonus to each full-time County employee who was actively employed as of September 29, 2017, and was hired on or before July 1, 2017.

24.     Major Gunn did not receive the $1,250 bonus award.  He was the only full-time employee hired on or before July 1, 2017, who did not receive the $1,250 bonus award.

25.     According to Defendant Prince George County's records related to the September 2017 bonus, Major Gunn was "not active on the payroll – on military leave" and was on "[m]ilitary leave without pay" in September 2017.

26.     Upon Major Gunn's return from active duty in January 2018, Defendant Prince George County refused to remit the $1,250 September 2017 bonus award to Major Gunn.

27.     USERRA prohibits an employer from denying a person any benefit of employment such as the September 2017 bonus on the basis of the person's military service, application to perform military service, assertion of USERRA protections, or exercise of USERRA rights.  *See* 38 U.S.C. § 4311(a).

**Major Gunn's Return to PGCPD from Active Duty Service in January 2018**

28.     In or around the first week of January 2018, Major Gunn notified PGCPD that he would be returning from active duty service in late January 2018.

29.     On or around January 15, 2018, Major Gunn learned from PGCPD's Support Operations Division Commander, who now serves as PGCPD's Deputy Police Chief, that upon his return from active duty service, he would not be returned to his position as a detective in the General Investigations Unit; instead, he would be reassigned to the Patrol Unit, the position in which he commenced his career with the PGCPD more than eighteen years earlier.

30.     Defendant Prince George County reassigned Major Gunn to the Patrol Unit despite the fact that PGCPD had an open slot in its detective ranks to which it could have reemployed Major Gunn immediately.  In January of 2018, PGCPD was operating with one less detective in its ranks as a result of an injury.

31.     Major Gunn asked Defendant Prince George County's Attorney, Police Chief, and HR Director to return him to his prior position of General Investigations Unit detective, citing Defendant Prince George County's obligations under USERRA.  More specifically, in connection with his request, Major Gunn informed Defendant Prince George County – through PGCPD leadership, the County Attorney, and County HR Director – that his correct USERRA reemployment position was a General Investigations Unit detective, the position he would have held had he not been on active duty.  Major Gunn also provided the same PGCPD leadership with a USERRA employers' handbook and the telephone number for individuals associated with the National Guard who provide assistance and support for employers seeking to understand their obligations under USERRA.  Each of these individuals declined his requests; in fact, one PGCPD supervisor informed Major Gunn that his request that Defendant Prince George County comply with its USERRA obligations made him sound "entitled."

32.     As directed, on January 25, 2018, Major Gunn returned to work at PGCPD as a uniformed Patrol Unit officer and began field training, as if he were a new Patrol Unit officer.  Major Gunn had to successfully complete field training before he was permitted to operate independently as a Patrol Unit officer.  As part of this field training, Major Gunn was required to shadow a current Patrol Unit officer – and the officer that PGCPD chose for Major Gunn to shadow had commenced his PGCPD tenure in 2012, ten years after Major Gunn commenced his PGCPD tenure as a detective.

**Detective Versus Patrol Officer**

33.     The Patrol Unit officer and General Investigations Unit detective positions with PGCPD differ in many ways, including work schedules, places of work, training opportunities, responsibilities, pay, overtime opportunities, duties, uniforms, and badges.

    a.   Work Schedule.   As a detective, Major Gunn worked Monday through Friday, typically from 8 a.m. to 4 p.m., and was on-call for one week each month.  As a Patrol Unit officer, Major Gunn worked twelve-hour shifts, resulting in him regularly working weekends and holidays.  The shift work associated with the Patrol Unit officer position also made it difficult for Major Gunn to schedule his VARNG weekend duty each month.

    b.   Training Opportunities.   As a Patrol Unit officer, Major Gunn did not have the same opportunities to attend training he would have attended as a detective.  As a detective, Major Gunn attended training to stay abreast of the latest developments in investigating major crimes and felonies; this training was not available to him as a Patrol Unit officer.

    c.   Pay.   A detective receives a salary increase upon becoming a detective, will have regular salary increases, and will continue to earn more in salary as a detective than a Patrol Unit officer with the same amount of prior experience as a law enforcement officer.  As a Patrol Unit officer, Major Gunn did not receive the $125 a month that General Investigations Unit detectives receive for serving one week of on-call duty each month, and did not have the opportunity to earn the substantial amounts of overtime pay that he used to earn as a detective while on-call.

d. <u>Duties.</u>  As a Patrol Unit officer, Major Gunn responded to initial calls concerning crimes and incidents as they occurred, secured the crime scene, and worked traffic control issues.  As a detective, Major Gunn used his specialized skills and training to further investigate crimes, which were usually more serious felonies.

e. <u>Uniforms.</u>  As a detective, Major Gunn wore civilian clothes to work, but as a Patrol Unit Officer, he was required to wear a uniform to work.  Knowing that Major Gunn had previously been a detective entitled to wear civilian clothes to work, other PGCPD officers laughed at Major Gunn when – after he was reassigned to the Patrol Unit upon the completion of his VARNG active duty – he appeared for his shift in a PGCPD uniform.

f. <u>Work Locations.</u>  As a Patrol Unit officer, Major Gunn patrolled an assigned area from a marked car, but as a detective, he generally worked from an office and drove an unmarked car.

g. <u>Responsibilities.</u>  As a detective, Major Gunn worked independently with minimal supervision to develop investigations and oversaw and directed the actions of Patrol Unit officers and forensic technicians at the scene of the crime.  He had to think creatively and play the devil's advocate, always questioning conclusions and looking for more evidence.  As a Patrol Unit officer, Major Gunn was typically the first to respond to a crime scene and would secure the scene until forensic technicians and detectives with whom he had previously served arrived to perform actual investigatory work.  Major Gunn, therefore, experienced a reduction in responsibilities when he was reemployed as a Patrol Unit officer rather than a detective.

h. <u>Badges.</u>  As a Patrol Unit officer, Major Gunn wore a badge that indicated he was a Patrol Unit officer; as a detective, Major Gunn's badge indicated that he was a detective.

34.     During field training for his new position as a Patrol Unit officer, Major Gunn wore a nametag that showed he had served with PGCPD since 1999; the nametag worn by the officer conducting the field training officer showed that he had served with PGCPD since in or around 2012.  Major Gunn's uniform had more service stripes than the officer supervising him, showing that Major Gunn had more law enforcement time than the field training officer. Therefore, it was visibly clear that a junior officer with significantly less law enforcement experience than Major Gunn was supervising Major Gunn.

35.     During field training, Major Gunn knew what was required of him as a patrol officer and showed his field training officer the type of information that a detective would want in a patrol officer's report.  Thus, Major Gunn was overqualified as a Patrol Unit officer and was not using the specialized training PGCPD had provided to him when it previously made him a detective.

36.     Major Gunn's Patrol Unit supervisor was younger than Major Gunn, and his Patrol Unit supervisor joined PGCPD at least two years after Major Gunn joined PGCPD.

37.     During shift roll call, Major Gunn was identified as being on field training, which was humiliating to him.

38.     Given the differences, reemploying Major Gunn as a Patrol Unit officer rather than a detective was a demotion.

39.     Under USERRA, an employee whose military service exceeds ninety days must be promptly reemployed in the position that the employee-veteran "would have attained with reasonable certainty if not for the absence[,]" or a position of like seniority, status, and pay.  38 U.S.C. § 4313(a)(2)(A).  This position is referred to as the "escalator" position.  *See* 20 C.F.R. § 1002.191.  If the employee is not qualified for the escalator position, despite reasonable efforts to qualify the employee, the employer must return the employee to the position held before military service, or a position of like seniority, status, and pay.  *See* 38 U.S.C. § 4313(a)(2)(B); 20 C.F.R. §§ 1002.191 & 1002.197.

40.     Major Gunn satisfied the notice, service length, characterization of service, and reemployment application requirements in 38 U.S.C. § 4312.

### Major Gunn's USERRA Complaint

41.     On January 23, 2018, Major Gunn filed a claim with the Veterans' Employment and Training Service, United States Department of Labor ("DOL VETS"), alleging that PGCPD failed to reemploy him in the correct reemployment position upon his return from active duty service, in violation of USERRA.

42.     In a letter dated January 26, 2018, DOL VETS notified PGCPD that it was investigating Major Gunn's claim that PGCPD violated USERRA.

### Return to Active Duty Service in March 2018

43.     In February 2018, Major Gunn volunteered for active duty in the VARNG because, in part, it was apparent that Defendant Prince George County would never reemploy him as a General Investigations Unit detective, as USERRA required.  He also volunteered to return to active duty in the VARNG to mitigate his damages, including economic harm suffered

from the loss of the monthly detective on-call duty pay and of the overtime pay opportunities as a detective, caused by Defendant Prince George County's failure to comply with USERRA.

44.     In or around late February 2018, Major Gunn notified his PGCPD supervisor that he was returning to active duty on or around March 2, 2018.

45.     On or around February 23, 2018, Major Gunn gave the PGCPD Field Operations Commander an interoffice memorandum, that stated, "[o]n March 2, 2018[,] I plan to freeze my retirement from the PG PD until I am eligible to collect. Thanks for the opportunity to work here."

46.     Major Gunn departed employment with PGCPD in good standing on March 2, 2018, and he has remained continuously on active duty with the VARNG since that date.

47.     USERRA prohibits an employer from denying a person any benefit of employment, which includes reemploying the person in the correct escalator position and retention in employment. Courts have interpreted USERRA to protect employees from constructive discharge on the basis of the employee's military service, application to perform military service, assertion of USERRA protections, or exercise of USERRA rights. *See* 38 U.S.C. § 4311(a).

48.     USERRA prohibits an employer, absent cause, from terminating the employment of an employee for one year after the employee returns from military service. *See* 38 U.S.C. § 4316(c). USERRA's prohibition applies to actual terminations and constructive discharge of a USERRA-protected employee.

49.     Major Gunn's demotion to a Patrol Unit officer position, and Defendant Prince George County's refusal to properly reemploy him as a Detective, effectively ended his career as a Detective with the County. The County's unlawful decision alone, but certainly once

- 11 -

combined with the loss of workplace benefits and the humiliating treatment Major Gunn received after his demotion, rendered Major Gunn's workplace conditions such that a reasonable employee in his position would have felt compelled to resign.

50.     Based on Major Gunn's communications with his superiors, PGCPD had actual knowledge of the unacceptable nature of Major Gunn's working conditions.

51.     Under USERRA, Major Gunn is entitled to immediate reemployment as a PGCPD detective and, upon his honorable discharge from the VARNG and reemployment as a PCGPD detective, for VRS retirement credit from March 2, 2018, to his reemployment.  *See* 38 U.S.C. § 4318.

**Major Gunn's Law Enforcement I.D. and Service Weapon Purchase Requests**

52.     In or around late February 2018, Major Gunn submitted a request to Defendant Prince George County's Police Chief pursuant to the Law Enforcement Officers Safety Act ("LEOSA"), 18 U.S.C. § 926C, and Va. Code Ann. § 9.1-1000, for a retired PGCPD law enforcement officer badge and photo identification card, which would allow him to carry a concealed firearm, and a request to purchase his service weapon for one dollar pursuant to Va. Code Ann. § 59.1-148.3.

53.     At all times relevant to this complaint, Major Gunn has been a "qualified retired law enforcement officer" under LEOSA, 18 U.S.C. § 926C.

54.     In a letter dated February 28, 2018, Defendant Prince George County's Police Chief denied Major Gunn's requests for the retired law enforcement badge and identification and to purchase his service weapon, citing Major Gunn's "ineligibility for retirement."

55.     USERRA prohibits an employer from denying a person any benefit of employment such as the LEOSA badge and identification card and service weapon purchase on the basis of the person's military service, application to perform military service, assertion of USERRA protections, or exercise of USERRA rights.  *See* 38 U.S.C. § 4311(a).

## Relief Defendant VRS

56.     Relief-Defendant VRS is a defined benefit retirement plan for Virginia law enforcement officers in which a participant's retirement benefit is determined by a formula that includes the participant's age at retirement, the average of the participant's thirty-six consecutive months of highest salary, and the participant's years of service or "service credit."

57.     A VRS participant earns service credit for each month that the participant's employer reports the participant to be employed in a covered position, and the participant's employer makes a contribution on the participant's behalf to VRS.

58.     A VRS participant can receive service credit at no cost for each occurrence of military leave from a VRS-covered position for active duty military service, if the VRS participant's discharge is not under dishonorable conditions, and if the participant returns to the covered position within one year of discharge from military service.

59.     A VRS participant who was hired or rehired before July 1, 2010, and who has at least sixty months of service credit, is eligible for reduced service retirement at age fifty.

## Major Gunn's VRS Benefits

60.     Major Gunn had intended to remain employed with PGCPD at least until April 2020, when he attained fifty years of age and could begin receiving early VRS retirement benefits in May 2020.

61.     Defendant Prince George County, however, refused to reemploy Major Gunn in the correct USERRA reemployment position of General Investigations Unit detective, and the accompanying loss of benefits and status resulted in the constructive discharge of Major Gunn from PGCPD.

62.     Major Gunn elected to return to active duty in March 2018 because Defendant Prince George County, through the above-referenced actions of its agents, constructively discharged him from its employment.  Major Gunn's election to return to active duty also served to mitigate his damages, including economic harm, caused by Defendant Prince George County's failure to comply with USERRA.

63.     Major Gunn's active duty military service that began on March 2, 2018, does not count towards USERRA's five-year service limit, because Defendant Prince George County caused Major Gunn's employment to be terminated in violation of USERRA, 38 U.S.C. § 4316, and because, pursuant to 20 C.F.R. § 1002.103(b), Major Gunn returned to active VARNG duty to mitigate the economic harm caused by Defendant Prince George County's failure to properly reemploy him as a General Investigations Unit detective.

64.     In May 2020, Major Gunn began receiving VRS retirement benefits at a reduced rate based on PGCPD's USERRA violations, including its constructive discharge of and failure to properly reemploy him.

65.     Had Major Gunn remained employed with PGCPD in March 2018, he would have accrued more time in VRS, and his average final compensation used to calculate his retirement benefit would have been higher than it currently is, which would have resulted in an increased monthly VRS benefit.

## COUNT I
## Violations of 38 U.S.C. § 4311 by Defendant Prince George County

66.     Major Gunn realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

67.     The following acts and omissions violated USERRA, 38 U.S.C. § 4311, because they were motivated, at least in part, by Major Gunn's VARNG service, his absence from PGCPD to perform military service, his exercise of his right to reemployment, and his filing of a USERRA complaint with DOL VETS:

       a.     Defendant Prince George County's reemployment of Major Gunn as a Patrol Unit officer, and its continued denial of Major Gunn's requests to be reemployed in the correct escalator position of General Investigations Unit detective;

       b.     Defendant Prince George County's denial of Major Gunn's request, made pursuant to LEOSA, 18 U.S.C. § 926C, and Va. Code Ann. § 9.1-1000, for an identification card that indicates that he is a retired law enforcement officer of PGCPD;

       c.     Defendant Prince George County's denial of Major Gunn's request to purchase his service weapon for one dollar, made pursuant to Va. Code Ann. § 59.1-148.3(A);

       d.     Defendant Prince George County's initial failure to and continued refusal to award Major Gunn the $1,250 bonus given to all qualified employees in September 2017; and

       e.     Defendant Prince George County's creation of objectively intolerable and discriminatory working conditions for Major Gunn that caused him to be discharged from employment with Defendant Prince George County.

- 15 -

68.     Defendant Prince George County showed a reckless disregard for whether its conduct was prohibited, and therefore, Defendant Prince George County's violations of Section 4311 were willful under USERRA, 38 U.S.C. § 4323(d)(1)(c).

69.     As a result of Defendant Prince George County's conduct, Major Gunn has suffered a loss of earnings, which he has mitigated by returning to active duty, and benefits, including VRS retirement benefits.

## COUNT II
### Violation of 38 U.S.C. § 4313 by Prince George County

70.     Major Gunn realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

71.     Defendant Prince George County violated USERRA, 38 U.S.C. § 4313, by failing to properly reemploy Major Gunn in the correct escalator position of General Investigations Unit detective position upon his return from military service.

72.     Defendant Prince George County showed a reckless disregard for whether its conduct was prohibited and, therefore, Defendant Prince George County's violation of Section 4313 was willful under USERRA, 38 U.S.C. § 4323(d)(1)(c).

73.     As a result of Defendant Prince George County's conduct, Major Gunn suffered a loss of earnings, which he has mitigated by returning to military service, and other benefits, including VRS retirement benefits.

## COUNT III
### Violation of 38 U.S.C. § 4316 by Defendant Prince George County

74.     Major Gunn realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

75.     The following acts and omissions violated USERRA, 38 U.S.C. § 4316:

a.      Defendant Prince George County's reemployment of Major Gunn as a

Patrol Unit officer and its continued denial of Major Gunn's requests to be reemployed in

the correct escalator position of detective;

b.      Defendant Prince George County's denial of Major Gunn's request, made

pursuant to LEOSA, 18 U.S.C. § 926C, and pursuant to Va. Code Ann. § 9.1-1000, for an

identification card that indicates that he is a retired law enforcement officer of PGCPD;

c.      Defendant Prince George County's denial of Major Gunn's request to

purchase his service weapon for one dollar, made pursuant to Va. Code Ann. § 59.1-

148.3(A);

d.      Defendant Prince George County's initial failure to and continued refusal

to award Major Gunn the $1,250 bonus given to all qualified employees in September

2017; and

e.      Defendant Prince George County's creation of objectively intolerable and

discriminatory working conditions for Major Gunn that caused Major Gunn to be

discharged from employment with Defendant Prince George County.

76.     Defendant Prince George County showed a reckless disregard for whether its

conduct was prohibited, and therefore, Defendant Prince George County's violation of Section

4316 was willful under USERRA, 38 U.S.C. § 4323(d)(1)(c).

77.     As a result of Defendant Prince George County's conduct, Major Gunn has

suffered a loss of earnings, which he has mitigated by returning to military service, and other

benefits, including VRS retirement benefits.

**COUNT IV**
**Violation of 38 U.S.C. § 4316 by Defendant Prince George County**

78.     Major Gunn realleges and incorporates by reference each allegation in the preceding paragraphs as if fully set forth herein.

79.     Defendant Prince George County created objectively intolerable and discriminatory working conditions for Major Gunn by, among other things:

   a.  Demoting him from a General Investigations Unit detective position to a Patrol Unit officer position;

   b.  Decreasing his pay and overtime pay opportunities;

   c.  Decreasing his responsibilities; and

   d.  Assigning him to a supervisor with significantly less law enforcement experience than Major Gunn.

80.     Defendant Prince George County caused Major Gunn to be discharged from employment without cause within one year of the date on which it reemployed Major Gunn, in violation of USERRA, 38 U.S.C. § 4316(c).

81.     Defendant Prince George County's violation of USERRA Section 4316 was willful under USERRA, 38 U.S.C. § 4323(d)(1)(C).

82.     As a result of Defendant Prince George County's conduct, Major Gunn has suffered a loss of earnings, which he has mitigated by returning to military service, and other benefits, including retirement credit in the VRS.

**Count V**
**Violation of 38 U.S.C. § 4318 by**
**Defendant Prince George County and Relief-Defendant VRS**

83.     Defendant Prince George County wrongfully terminated Major Gunn's employment in violation of USERRA, 38 U.S.C. §§ 4311 & 4316(c), and failed to reemploy Major Gunn in the correct escalator position of General Investigations Unit detective in violation of USERRA, 38 U.S.C. § 4313.

84.     Major Gunn returned to active duty service, in part, to mitigate the economic harm that Defendant Prince George County's failure to reemploy him in the correct escalator position, in violation of 38 U.S.C. §§ 4311, 4313, and 4316, caused him.

85.     Major Gunn's military service beginning on March 2, 2018, does not count towards USERRA's five-year service limit for two independent reasons:

        a.  Pursuant to 20 C.F.R. § 1002.103(b), Major Gunn returned to active duty military service, in part, to mitigate the economic harm caused by Defendant Prince George County's failure to properly reemploy him in a General Investigations Unit detective position, in violation of 38 U.S.C. §§ 4311, 4313, and 4316; and

        b.  Defendant Prince George County caused Major Gunn's employment to be terminated within a year of his return from active duty service, in violation of 38 U.S.C. §4316(c).

86.     Major Gunn is entitled to immediate reemployment as a PGCPD General Investigations Unit detective or, alternatively, all salary and benefits that he would have accrued between March 2018 through April 2020, less mitigation, including VRS retirement credit.

87.     Pursuant to 38 U.S.C. § 4318, Defendant Prince George County and Relief Defendant VRS must, upon Major Gunn's reemployment, give him VRS pension credit for his period of military service that began on March 2, 2018.

88.     Defendant Prince George County's violations of USERRA Sections 4311, 4313, and 4316 were willful under USERRA, 38 U.S.C. § 4323(d)(1)(C).

89.     As a result of Defendant Prince George County's conduct, Major Gunn has suffered a loss of earnings, which he has mitigated by returning to military service, and other benefits, including VRS retirement credit.

<strong>REQUEST FOR RELIEF</strong>

WHEREFORE, the United States on behalf of Major Gunn respectfully requests that the Court award the following relief:

A.      Declare that Defendant Prince George County violated USERRA Section 4313 when it refused to properly reemploy Major Gunn as a General Investigations Unit detective;

B.      Declare that Major Gunn's protected status, assertion of his USERRA rights, and his pursuit of a USERRA complaint through DOL VETS were, in violation of USERRA, 38 U.S.C. § 4311, substantial or motivating factors in Defendant Prince George County's decision to:

1.      Reemploy Major Gunn as a Patrol Unit officer;

2.      Repeatedly refuse Major Gunn's requests to reemploy him in the correct USERRA escalator position of General Investigations Unit detective;

3.      Deny Major Gunn's request for a LEOSA identification card;

4.      Deny Major Gunn's request to purchase his service weapon; and

5.      Refuse to award Major Gunn the September 2017 bonus;

C.      Declare that Defendant Prince George County violated USERRA Section 4311 when it:

1.      Reemployed Major Gunn as a Patrol Unit officer upon his return to PGCPD on January 15, 2018;

2.      Repeatedly denied Major Gunn's requests to reemploy him in the correct USERRA escalator position of General Investigations Unit detective;

3.      Denied Major Gunn's request, made pursuant to LEOSA, 18 U.S.C. § 926C, and Va. Code Ann. § 9.1-1000, for a retired law enforcement officer identification card;

4.      Denied Major Gunn's request to purchase his service weapon, made pursuant to Virginia law, Va. Code Ann. § 59.1-148.3(A); and

5.      Refused to award Major Gunn the September 2017 bonus of $1,250;

D.      Declare that Defendant Prince George County violated USERRA Section 4316 when it:

1.      Reemployed Major Gunn as a Patrol Unit officer upon his return to PGCPD on January 15, 2018;

2.      Repeatedly denied Major Gunn's requests to reemploy him in the correct USERRA escalator position of General Investigations Unit detective;

3.      Denied Major Gunn's request, made pursuant to LEOSA, 18 U.S.C. § 926C, and Va. Code Ann. § 9.1-1000, for a retired law enforcement officer identification card;

4.      Denied Major Gunn's request to purchase his service weapon, made pursuant to Virginia law, Va. Code Ann. § 59.1-148.3(A); and

- 21 -

      5.      Refused to award Major Gunn the September 2017 bonus of $1,250;

E.      Declare that Defendant Prince George County caused Major Gunn's employment to be terminated in March 2018, in violation of USERRA Section 4316(c), when it refused to reemploy Major Gunn as a General Investigations Unit detective, which created intolerable and discriminatory working conditions;

F.      Declare that Major Gunn returned to military service on March 2, 2018, to, in part, mitigate his economic damages caused by Defendant Prince George County's refusal to reemploy him in the correct escalator position of General Investigations Unit detective.

G.      Declare that Major Gunn's period of military leave from PGCPD starting on March 2, 2018, is exempted from USERRA's five-year service limit either pursuant to 20 C.F.R. § 1002.103(b) or because Defendant Prince George County caused Major Gunn's employment to be terminated in violation of USERRA, 38 U.S.C. § 4316(c);

H.      Declare that Major Gunn is entitled to all USERRA protections and benefits, including VRS retirement credit, during his current period of military service, which began on March 2, 2018; and

I.      Declare that Defendant Prince George County's violations were willful or taken in reckless disregard of the law.

WHEREFORE, the United States respectfully requests that the Court award the following relief:

A.      Order that:

      1.      Defendant Prince George County pay Major Gunn all lost wages and any other compensatory damages for Major Gunn's lost past and future earnings and benefits,

including the $250 for two months of on-call detective pay that he should have earned in January and February 2018;

2.     Defendant Prince George County provide Major Gunn all benefits he would have accrued while he was on active duty for the period February 2016 through January 2018, including the $1,250 bonus Defendant Prince George County gave to all eligible employees in September 2017;

3.     Defendant Prince George County immediately reemploy Major Gunn as a detective in the General Investigations Unit;

4.     Defendant Prince George County report to Relief-Defendant VRS that Major Gunn is entitled to service credit for his current period of military service, which began on March 2, 2018;

5.     Defendant Prince George County make contributions to VRS on Major Gunn's behalf for Major Gunn's current period of military service, which began on March 2, 2018; and

6.     Relief-Defendant VRS update Major Gunn's VRS account to reflect his military leave status and retirement credit from March 2, 2018, to the date Defendant Prince George County reemploys him as a General Investigations Unit detective; or, in the alternative,

B.     Order that:

1.     Defendant Prince George County pay Major Gunn all lost wages and any other compensatory damages for Major Gunn's lost past and future earnings and benefits, including the $250 for two months of on-call detective pay that he should have earned in January and February 2018;

2.      Defendant Prince George County provide Major Gunn all benefits he would have accrued while he was on active duty for the period February 2016 through January 2018, including the $1,250 bonus Defendant Prince George County gave to all eligible employees in September 2017;

3.      Defendant Prince George County issue Major Gunn a LEOSA identification card or badge, pursuant to LEOSA, 18 U.S.C. § 926C, and Va. Code Ann. § 9.1-1000;

4.      Defendant Prince George County allow Major Gunn to purchase his service weapon for one dollar, pursuant to Va. Code Ann. § 59.1-148.3(A);

5.      Defendant Prince George County report to Relief-Defendant VRS that Major Gunn is entitled to VRS service credit for the period of March 2, 2018, through April 30, 2020;

6.      Defendant Prince George County make contributions to VRS on Major Gunn's behalf for Major Gunn's period of military service from March 2, 2018, through April 30, 2020; and

7.      Relief-Defendant VRS update Major Gunn's VRS account to reflect his military leave status and service credit from March 2, 2018, through April 30, 2020;

C.      Award Major Gunn liquidated damages in an amount equal to the amount of his lost benefits suffered by reason of Defendant Prince George County's willful or reckless violations under 38 U.S.C. § 4323(d)(1)(C);

D.      Award prejudgment interest on the amount of lost wages and benefits due; and

E.      Grant such other and further relief as may be just and proper together with the costs and disbursements of this lawsuit.

- 24 -

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States demands trial by jury.

Dated: September 30, 2021

Respectfully submitted,

RAJ PAREKH                                              KRISTEN CLARKE
Acting United States Attorney                           Assistant Attorney General
Eastern District of Virginia                            Civil Rights Division
By:

/s/ Deirdre G. Brou                                     /s/ Shan R. Shah
DEIRDRE G. BROU                                         SHAN R. SHAH
LAUREN OBERHEIM                                         Trial Attorney
Assistant United States Attorneys                       U.S. Department of Justice
United States Attorney's Office                         Civil Rights Division
2100 Jamieson Avenue                                    Employment Law Section
Alexandria, Virginia 22314                              4 Constitution Square
Tel: (703) 299-3770/3991                                Washington, D.C., 20530
150 M Street, N.E., Suite 9.1143                        Tel: (202) 598-9621
Fax: (703) 299-3983                                     Email: shan.shah@usdoj.gov
Email: deirdre.g.brou@usdoj.gov
Email: lauren.oberheim@usdoj.gov

ROBERT P. MCINTOSH (VSB #66113)
Assistant United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-7404
Facsimile: (804) 771-2316
Email: Robert.McIntosh@usdoj.gov